# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

MARK A. HILL,                           :      Case No. 2:23-cv-3356
                                        :
     Petitioner,                       :
                                        :      District Judge Algenon L. Marbley
vs.                                     :      Magistrate Judge Elizabeth Preston Deavers
                                        :
WARDEN, PICKAWAY                        :
CORRECTIONAL INSTITUTION,               :
                                        :
     Respondent.                       :

---

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner proceeding without the assistance of counsel, has filed petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition, respondent's motion to dismiss, and petitioner's opposition.  (Doc. 1, 11, 14).

For the reasons stated below, the undersigned recommends that the motion to dismiss be granted and the petition be dismissed because it is time-barred pursuant to 28 U.S.C. § 2241(d)(1).

## I.  FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's conviction and sentence:[1]

> {¶ 2} On October 18, 2018, appellant was indicted on one count of aggravated burglary, in violation of R.C. 2911.11, a first-degree felony, and one count of

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct.  *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

felonious assault, in violation of R.C. 2903.11, a second-degree felony. Each count included a repeat-violent-offender ("RVO") specification, pursuant to R.C. 2941.149(A). The indictment alleged that each of the foregoing offenses occurred on or about August 25, 2018. Appellant entered a not guilty plea to the charges and requested a jury trial.

{¶ 3} On August 20, 2019, a jury trial commenced. At trial, the following evidence was adduced. In 2016, appellant Mark A. Hill began dating Brittany Hamm ("Ms. Hamm"), a woman who had been struggling with heroin addiction since 2013. (Aug. 20, 2019 Tr. Vol. I at 41, 57.) Ms. Hamm's grandmother, Rita Hamm ("Mrs. Hamm"), knew appellant through his association with Ms. Hamm and, for a brief period of time, Mrs. Hamm allowed appellant to live in her home. (Tr. Vol. I at 57, 59.)

{¶ 4} In August 2016, after appellant had moved out, Mrs. Hamm permitted Martie Jacobs ("Jacobs"), a long-time family friend and the victim in this case, to move into her home. (Tr. Vol. I at 35-37; Aug. 21, 2019 Vol. II at 7, 11.) Jacobs lived in the front bedroom of the home. (Tr. Vol. I at 40; Tr. Vol. II at 13-14.) Jacobs suffered from severe arthritis and degenerative disc disease stemming from a back injury he had sustained when he was younger. (Tr. Vol. II at 5, 9.) Due to his physical impairments, Jacobs had stopped working in 2011 or 2012. (Tr. Vol. II at 9.) At trial, Mrs. Hamm testified that Jacobs, then 53 years old, was frail due to his physical disabilities. (Tr. Vol. I at 51.) Mrs. Hamm and Jacobs both testified that Jacobs did odd jobs for Mrs. Hamm and he contributed to buying groceries by using his food stamps. (Tr. Vol. I at 38; Tr. Vol. II at 12.).

{¶ 5} Mrs. Hamm permitted Ms. Hamm to come to her home despite that Ms. Hamm would lie to her and had stolen her property. (Tr. Vol. I at 42-43.) On August 25, 2018, Ms. Hamm went to Mrs. Hamm's home to shower and get something to eat. (Tr. Vol. I at 44.) While Ms. Hamm was in the garage smoking a cigarette and talking on her phone, Mrs. Hamm heard her yell that Jacobs had hit her in the face. (Tr. Vol. I at 46.) Ms. Hamm was crying. *Id.* Neither Mrs. Hamm nor Ms. Hamm called the police, and Mrs. Hamm testified that Ms. Hamm did not have any noticeable injuries. (Tr. Vol. I at 46-47, 48, 52.)

{¶ 6} Earlier that afternoon, Jacobs had been at a neighbor's house drinking and watching pre-season football, and he testified that he had been drinking and was drunk. (Tr. Vol. II at 21, 37-38.) Mrs. Hamm testified, however, that when he returned to the home, he was not slurring his words or otherwise out of control. (Tr. Vol. I at 86.) Both Mrs. Hamm and Jacobs testified that while Ms. Hamm was in the garage, Jacobs was outside on the front porch smoking a cigarette. (Tr. Vol. I at 46; Tr. Vol. II at 22.) Mrs. Hamm further testified that Jacobs denied hitting Ms. Hamm, and she did not see Jacobs hit her. (Tr. Vol. I at 47.)

{¶ 7} Jacobs testified that after he had finished his cigarette, he came inside, saw Ms. Hamm, who was in the kitchen, and confronted her about her behavior from two days earlier involving her bringing a man into the home. (Tr. Vol. II at 22- 23.) He told her that if she did not stop this type of behavior, he was going to call the police. (Tr. Vol. II at 23.) In response, Ms. Hamm picked up a knife that had been laying on the table and threatened to kill or stab him. *Id*. Jacobs grabbed her hand, took the knife from her, "threw her into the living room on the floor," and "fell down on top of her." (Tr. Vol. II at 23-24.)

{¶ 8} Both Mrs. Hamm and Jacobs testified that at this point, Mrs. Hamm intervened in the altercation and pushed Jacobs off Ms. Hamm. (Tr. Vol. I at 49; Tr. Vol. II at 24.) Mrs. Hamm testified that although she did not see a knife during the altercation, she saw a knife on the living room floor. (Tr. Vol. I at 49-50.) It was a knife she kept in her kitchen. (Tr. Vol. I at 82-83; State's Ex. 22.) Jacobs testified the altercation between Ms. Hamm and himself took place in the early evening around 6:00 p.m. (Tr. Vol. II at 24.) Mrs. Hamm testified the altercation occurred around 9:00 p.m. (Tr. Vol. I at 52.) Both Mrs. Hamm and Jacobs testified that after the incident, Jacobs went to his room, shut his door, took his medications and went to bed. (Tr. Vol. I at 51; Tr. Vol. II at 24-25.)

{¶ 9} Mrs. Hamm testified that sometime between 10:30 and 11:00 p.m., appellant arrived at the residence. (Tr. Vol. I at 57, 60.) Appellant entered the home from the garage door leading into the kitchen and proceeded straight to Jacobs' bedroom. (Tr. Vol. I at 60-61.) Appellant had been in Jacobs' bedroom for five to seven minutes when Ms. Hamm came into the kitchen from the garage and entered Jacobs' bedroom. (Tr. Vol. I at 61-62.) A few minutes later, both appellant and Ms. Hamm exited Jacobs' bedroom and went out the front door of the home. (Tr. Vol. I at 62.) Mrs. Hamm did not hear anyone yelling while appellant and Ms. Hamm were in Jacobs' bedroom. *Id*.

{¶ 10} Jacobs testified he was in a light sleep when he heard his bedroom door open. (Tr. Vol. II at 26-27.) Turning to look over his shoulder, he saw appellant standing in his room. (Tr. Vol. II at 27.) Jacobs then saw appellant pull a sledgehammer from his pants. (Tr. Vol. II at 29.) Appellant hit Jacobs in the face near his left eye. (Tr. Vol. II at 29-30.) Jacobs fell to his knees on the floor, and appellant hit him again on the other side of his face. (Tr. Vol. II at 30.) After the assault, Jacobs passed out and went in and out of consciousness and did not fully wake up until one day or so later. (Tr. Vol. II at 30-31.)

{¶ 11} Mrs. Hamm testified that after appellant and Ms. Hamm had left the house, she saw Jacobs go into the bathroom and soon heard Jacobs yelling for her. (Tr. Vol. I at 65.) She found him lying in a fetal position in the bathroom, with blood

3

all over his face and arms and blood spatter on his pants. (Tr. Vol. I at 65-66.) She also saw blood in the bathroom, in the hallway, and in Jacob's bedroom on the runner carpet. (Tr. Vol. I at 67.) Mrs. Hamm further testified the runner was covered in blood and that she put it in the trash can. (Tr. Vol. I at 68.) She called 911 and Jacobs was transported to the hospital. (Tr. Vol. I at 66.)

{¶ 12} At the hospital, Jacobs underwent a 12-hour surgery to reconstruct one eye socket and his jaw. (Tr. Vol. II at 32.) He had to undergo rehabilitation to learn to walk and swallow again, and he still had problems walking which he might never recover from. (Tr. Vol. II at 33.) Jacobs also had to undergo 4 follow-up surgeries to address problems with his tear ducts and pain from one of the steel plates used in the reconstruction surgery. (Tr. Vol. II at 34.) He also had to see an eye specialist and a plastic surgeon. *Id.* As a result of the assault, a portion of the left side of Jacobs' face is permanently concave. (Tr. Vol. II at 35.)

{¶ 13} Appellant testified at trial. According to appellant, at about 10:00 p.m. on August 25, 2018, Ms. Hamm called him to ask him to pick her up at Mrs. Hamm's home. (Tr. Vol. II at 90.) While he was driving to the residence, Ms. Hamm contacted him again via a video call. (Tr. Vol. II at 91-92.) Ms. Hamm was crying And hysterical and she told appellant that Jacobs had punched her in the eye. (Tr. Vol. II at 92.) Appellant testified he "could tell where she had been punched." *Id.*

{¶ 14} According to appellant, when he arrived at the residence, Ms. Hamm was in the garage smoking a cigarette and still crying. (Tr. Vol. II at 93.) After speaking with Ms. Hamm about what had happened, he decided to go inside and talk to Jacobs, Telling Ms. Hamm, "[c]ome on, let's go talk to him." (Tr. Vol. II at 94.) Ms. Hamm told appellant Jacobs was in the bedroom, and they both walked to the bedroom. (Tr. Vol. II at 95.) Appellant knocked once on the bedroom door and entered the room. *Id.* Appellant testified that he wanted to let Jacobs know "to keep his damn hands off my girl" and asked him why Jacobs had put his hands on her. *Id.*

{¶ 15} In contrast to Jacobs' testimony describing the assault, appellant testified that it was Jacobs who first took a swing at appellant, but appellant dodged the blow. (Tr. Vol. II at 95-96.) Appellant testified that he was shocked by Jacobs' actions and "wasn't expecting to get into no physical confrontation with him, you know." (Tr. Vol. II at 95.) Appellant further testified that in response, he hit Jacobs about four times using only his fist and that Jacobs fell back on the bed. (Tr. Vol. II at 96.) Appellant denied having a sledgehammer or any other kind of hammer with him during the incident. (Tr. Vol. II at 90-91.) He further testified that he did not see any blood or pay any attention to Jacobs' face. (Tr. Vol. II at 96-97.) After reiterating his warning to "[k]eep your fucking hands off my girl," appellant and Ms. Hamm left. (Tr. Vol. II at 97.) Later that night, appellant took photographs of

4

Ms. Hamm's black eye using his phone. (Tr. Vol. II at 98.)

{¶ 16} When Columbus Police subsequently investigated the incident, appellant waived his Miranda rights and voluntarily spoke with Detective Kathy Zimmer. (Tr. Vol. I at 119-20.) Appellant showed the police the photographs of Ms. Hamm's face he had taken, copies of which were admitted into evidence at trial. (Tr. Vol. I at 121; Tr. Vol. II at 98; Def. Exs. A1-A5.) Appellant also showed the police text messages between himself and Ms. Hamm. (Tr. Vol. II at 98.)

{¶ 17} At the close of the state's case, outside of the presence of the jury, defense counsel moved for acquittal pursuant to Crim.R. 29. (Tr. Vol. II at 138.) After listening to arguments from defense counsel and the prosecutor, the trial court denied the motion. (Tr. Vol. II at 138-39.) Subsequently, at the close of the defense's case, and again outside of the presence of the jury, defense counsel renewed his motion for acquittal based on Crim.R. 29. (Tr. Vol. II at 149.) The trial court again denied the motion. *Id.*

{¶ 18} At the conclusion of the trial, the jury returned a verdict acquitting appellant of aggravated burglary and finding him guilty of felonious assault, a second-degree felony. The court convicted appellant for the RVO specification on the felonious assault charge. On September 20, 2019, the trial court issued a judgment entry which reflected the verdicts of the jury and the court and imposed an aggregate 12-year term of incarceration.

(Doc. 8, Ex. 12 at PageID 245-50).

## II. PROCEDURAL HISTORY

### State Trial Proceedings

On October 18, 2018, the Franklin County, Ohio grand jury returned a two-count indictment charging petitioner one count of aggravated burglary and one count of felonious assault. (Doc. 8, Ex. 1). Both counts included a repeat violent offender specification.

Following a jury trial, petitioner was found guilty of felonious assault and the accompanying repeat violent offender specification. (Doc. 8, Ex. 5). Petitioner was acquitted of the aggravated burglary charge. Petitioner was sentenced on September 19, 2019 to a total prison sentence of twelve years in the Ohio Department of Rehabilitation and Correction. (Doc.

8, Ex. 6).

## Direct Appeal

Petitioner, with the assistance of counsel, filed a notice of appeal to the Ohio Court of Appeals.  (Doc. 8, Ex. 7).  Petitioner raised the following three assignments of error in his appellate brief:

I. The trial court erred when it denied Defendant-Appellant's R.29 Motion for Acquittal (Vol. 2, P. 139, 149)

II.  The verdict of felonious assault was against the manifest weight of the evidence.  (Vol. 2, P. 215).

III. The trial court abused its discretion in allowing the state to present evidence of other acts/crimes/convictions.  (Vol. 2, P. 105-106).

(Doc. 8, Ex. 8 at PageID 179).  On January 21, 2021, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the judgment of the trial court.  (Doc. 8, Ex. 13).

## Ohio Supreme Court

On March 10, 2021, petitioner filed a pro se notice of appeal to the Ohio Supreme Court. (Doc. 8, Ex. 13).  In his memorandum in support of jurisdiction, petitioner raised the following three propositions of law:

I. The trial court erred when it denied Defendant-Appellant's R. 29 Motion for Acquittal where the evidence presented was insufficient to convict.

II. The verdict of felonious assault was against the manifest weight of the evidence where the State failed to meet its burden of proof that Defendant-Appellant did not act in self-defense.

III. The trial court abused its discretion in allowing the State to present evidence of other acts/crimes/convictions

(Doc. 8, Ex. 14 at PageID 265).  On April 27, 2021, the Ohio Supreme Court declined to accept

jurisdiction of the appeal.  (Doc. 8, Ex. 16).

### Application for Reconsideration

Meanwhile, on March 4, 2021, petitioner filed a "request for enlargement of time to file application for reconsideration and/or en banc consideration instanter" in the Ohio Court of Appeals.  (Doc. 8, Ex. 32).  Petitioner sought reconsideration of the Court of Appeals' January 21, 2021 direct appeal judgment entry.  On May 13, 2021 the Ohio Court of Appeals denied petitioner's application for reconsideration and for consideration en banc.  (Doc. 8, Ex. 36, 37).

Petitioner appealed the decision to the Ohio Supreme Court, which denied jurisdiction of the appeal on August 17, 2021.  (Doc. 8, Ex. 39, 41).

### Post-Conviction Petition

During the pendency of petitioner's direct appeal, petitioner filed a pro se petition to vacate or set aside his judgment of conviction.  (Doc. 8, Ex. 17).  On December 17, 2020, the trial court denied the petition.  (Doc. 8, Ex. 22).

On January 11, 2021, petitioner appealed the trial court's order to the Ohio Court of Appeals.  (Doc. 8, Ex. 23, 24).  On November 2, 2021, the Ohio appeals court overruled petitioner's assignments of error and affirmed the judgment of the trial court.[2]  (Doc. 8, Ex. 27).

Petitioner filed an appeal to the Ohio Supreme Court, which denied jurisdiction of the appeal on February 15, 2022.  (Doc. 8, Ex. 28, 29, 31).

Petitioner also filed a petition for a writ of certiorari in the United States Supreme Court on May 16, 2022, which was denied on June 27, 2022.  (*See* Doc. 8, Ex. 72).

---

[2] Petitioner filed a motion to reconsider the Ohio Court of Appeals ruling, which was denied as being untimely filed on February 17, 2022.  (Doc. 8, Ex. 51, 56).

**Application to Reopen**

On April 8, 2021, petitioner filed a pro se application to reopen his appeal pursuant to

Ohio App. R. 26(B).  (Doc. 8, Ex. 42).  Petitioner argued that his appellate counsel was

ineffective for failing to raise the following four assignments of error on direct appeal:

> I.     Defense counsel provided ineffective assistance in not objecting to the
> failure of the trial court to provide a limiting instruction with respect to
> testimony allowed regarding the use of a sledgehammer in commission of
> the felonious assault offense.
>
> II.    The trial court plainly erred, to the prejudice of Appellant, by failing to
> instruct on the lesser included offense of reckless assault.
>
> III.   Defense counsel provided ineffective assistance of counsel by representing
> conflicting interests when stipulating to the serious physical harm element
> of R.C. 2903.11(A)(1).
>
> IV.   The trial court plainly erred and prejudiced Appellant by failing to provide
> the jury with the legal definition of "non-deadly force" self-defense.

(Doc. 8, Ex. 42).  On September 2, 2021, the Ohio Court of Appeals denied petitioner's

application.  (Doc. 8, Ex. 46).

On October 21, 2021, petitioner filed a notice of appeal to the Ohio Supreme Court,

which declined jurisdiction of the appeal on December 14, 2021.  (Doc. 8, Ex. 47, 48, 50).  On

April 28, 2022, petitioner filed a petition for a writ of certiorari to the United States Supreme

Court, which was denied on October 3, 2022.  (Doc. 8, Ex. 73).

**Motion for New Trial**

On March 11, 2022, petitioner filed a motion for leave to file a motion for a new trial

pursuant to Ohio Crim R. 33(B), a separate Rule 33(B) "Motion for New Trial based upon

Newly Discovered Brady Material Evidence," and motion for access to public records of the

8

police department and prosecutor's office in the trial court. (Doc. 8, Ex. 57, 58, 62). On August 19, 2022, the trial court denied petitioner's motions. (Doc. 8, Ex. 63).

Petitioner filed a notice of appeal to the Ohio Court of Appeals. (Doc. 8, Ex. 64). On June 13, 2023, the Ohio Court of Appeals affirmed the judgment of the trial court. (Doc. 8, Ex. 67). The appeals court concluded that petitioner failed to demonstrate "that he was unavoidably prevented from discovering the evidence on which he seeks to base his motion for leave to file a motion for new trial or from timely filing a motion for new trial based on prosecutorial misconduct under *Brady*." (*Id.* at PageID 1065).

Petitioner filed a notice of appeal to the Ohio Supreme Court, which denied jurisdiction of the appeal on September 12, 2023. (Doc. 8, Ex. 71).

### Federal Habeas Corpus

On October 4, 2023,[3] petitioner commenced the instant federal habeas corpus proceeding. Petitioner raises the following sixteen grounds for relief in the petition:

> **GROUND ONE**: THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S R.29 MOTION FOR ACQUITTAL [SUFFICIENCY OF THE EVIDENCE].

> **GROUND TWO**: THE VERDICT OF FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

> **GROUND THREE**: THE TRIAL COURT ABUSED ITS DISCRETION IN

---

[3] The petition was received by the Court on October 11, 2023. (*See* Doc. 1). Petitioner avers, however, that he placed the petition in the prison mailing system for delivery to the Court on October 4, 2023. (*See* Doc. 1 at PageID 54). Because under *Houston v. Lack,* 487 U.S. 266 (1988), the filing date of a federal habeas corpus petition submitted by a pro se prisoner is the date on which the prisoner provides his papers to prison authorities for mailing, *see In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997), it is presumed that the petition was "filed" on October 4, 2023.

ALLOWING THE STATE TO PRESENT EVIDENCE OF OTHER ACTS/CRIMES/CONVICTIONS.

**GROUND FOUR**: THIS CASE WAS ORIGINALLY REVIEWED UPON AN INCOMPLETE TRIAL COURT RECORD.

**GROUND FIVE**: THE TRIAL COURT ABUSED ITS DISCRETION WHEN DENYING APPELLANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM FOR FAILING TO CALL DR. KENNAH AS AN EXPERT WITNESS, WITHOUT AN EVIDENTIARY HEARING, BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS AND EVIDENCE CONTRARY TO CLEARLY ESTABLISHED CONSTITUTIONAL LAW IN VIOLATION OF HIS RIGHTS IN THE 5TH, 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

**GROUND SIX**: THE TRIAL COURT ABUSED ITS DISCRETION WHEN APPLYING RES JUDICATA TO DENY APPELLANT'S CLAIM THAT HE WAS PREJUDICED AND DENIED A FAIR TRIAL DUE TO THE PROSECUTION'S KNOWING USE OF MARTIE JACOBS' FALSE AND PERJURED TESTIMONY, WITHOUT AN EVIDENTIARY HEARING, BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS AND EVIDENCE PRESENTED CONTRARY TO CLEARLY ESTABLISHED CONSTITUTIONAL LAW IN VIOLATION OF HIS RIGHTS IN THE 5TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND SECTION 16, ARTICLE OF THE OHIO CONSTITUTION.

**GROUND SEVEN**: THE TRIAL COURT ABUSED ITS DISCRETION WHEN UNREASONABLY APPLYING RES JUDICATA, IN LIGHT OF THE EVIDENCE AND FACTS PRESENTED, TO DENY APPELLANT'S CLAIM THAT THE TRIAL COURT SPECIFICALLY RELIED UPON FALSE TESTIMONY AND MISINFORMATION AT SENTENCING, CONTRARY TO CLEARLY ESTABLISHED CONSTITUTIONAL LAW IN VIOLATION OF HIS RIGHTS IN THE 5TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.

**GROUND EIGHT**: THE TRIAL COURT ABUSED ITS DISCRETION WHEN DENYING APPELLANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM FOR FAILING TO CALL INVESTIGATOR AMY SLAVEN AS AN EXPERT WITNESS, WITHOUT AN EVIDENTIARY HEARING, BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS AND EVIDENCE CONTRARY TO CLEARLY ESTABLISHED CONSTITUTION LAW IN

VIOLATION OF THE 5TH, 6TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

**GROUND NINE**: THE TRIAL COURT ABUSED ITS DISCRETION WHEN MISAPPLYING *STRICKLAND* TO DENY APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL FOR ACTIVELY REPRESENTING CONFLICTING INTERESTS BY AGREEING TO THE AMENDMENT OF THE INDICTMENT AT TRIAL, WITHOUT AN EVIDENTIARY HEARING, UNREASONABLY DETERMINING THE FACTS AND EVIDENCE CONTRARY TO CLEARLY ESTABLISHED CONSTITUTIONAL LAW IN VIOLATION OF HIS RIGHTS IN THE 5TH, 6TH & 14TH AMENDMENTS TO THE U.S. CONSTITUTION ANS SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

**GROUND TEN**: COURT-APPOINTED APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE AS ERROR THAT DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE IN NOT OBJECTING TO THE FAILURE OF THE TRIAL [COURT] TO PROVIDE A LIMITING INSTRUCTION WITH REGARD TO TESTIMONY ALLOWED REGARDING USE OF A SLEDGEHAMMER IN COMMISSION OF THE FELONIOUS ASSAULT OFFENSE.

**GROUND ELEVEN**: APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE AS ERROR THAT THE TRIAL COURT PLAINLY ERRED, TO THE PREJUDICE OF APPELLANT FOR FAILING TO INSTRUCT ON THE LESSER INCLUDED OFFENSE OF RECKLESS ASSAULT.

**GROUND TWELVE**: APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE AS ERROR THAT THE TRIAL COURT PLAINLY ERRED AND PREJUDICED APPELLANT BY FAILING TO PROVIDE THE JURY WITH THE LEGAL DEFINITION OF "NON-DEADLY FORCE" SELFDEFENSE.

**GROUND THIRTEEN**: APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE AS ERROR DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY REPRESENTING CONFLICTING INTERESTS WHEN STIPULATING TO THE SERIOUS PHYSICAL HARM ELEMENT OF R.C. 2903.11(A)(1).

**GROUND FOURTEEN**: THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED APPELLANT OF DUE PROCESS AND EQUAL PROTECTION OF THE LAWS WHEN DENYING HIS MOTION FOR LEAVE TO FILE A

CRIMINAL RULE 33 MOTION FOR NEW TRIAL, WITHOUT AN EVIDENTIARY HEARING, BASED UPON THE PRIMA FACIE SHOWING OF NEWLY DISCOVERED EVIDENCE, CONTRARY TO LAW.

**GROUND FIFTEEN**: THE TRIAL COURT ABUSED ITS DISCRETION AND DEPRIVED APPELLANT OF DUE PROCESS AND EQUAL PROTECTION OF THE LAWS WHEN DENING HIS MOTION FOR LEAVE TO FILE A CRIMINAL RULE 33 MOTION FOR NEW TRIAL BASED UPON THE PRIMA FACIE SHOWING OF A BRADY MATERIAL EVIDENCE VIOLATION, WITHOUT AN EVIDENTIARY HEARING, CONTRARY TO CLEARLY ESTABLISHED CONSTITUTIONAL LAW.

**GROUND SIXTEEN**: THE CUMULATIVE EFFECT OF NUMEROUS CONSTITUTIONAL ERRORS DENIED PETITIONER OF A FUNDAMENTALLY FAIR JURY TRIAL.

(Doc. 1).  Respondent has filed a motion to dismiss the petition, which petitioner opposes.  (Doc.

11, 14).

## III.  THE PETITION SHOULD BE DISMISSED.

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody

pursuant to the judgment of a state court must file an application for a writ of habeas corpus

within one year from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the

pendency of a properly filed application for state post-conviction relief or other collateral review.

There is no evidence in the record in this case to suggest that the provisions set forth in

§§ 2244(d)(1)(B) through (D) apply to petitioner's ground for relief.  Petitioner has not alleged

that a State created impediment prevented him from filing the instant petition or that his claims

are governed by a newly recognized constitutional right made retroactively applicable to his

case.  Furthermore, petitioner has failed to demonstrate that the factual predicate of his claims

could not have been discovered through the exercise of due diligence prior to the close of direct

appeal.  Because petitioner was aware of the facts underlying his claims or the claims could have

been discovered through the exercise of due diligence by the close of the direct review, his

grounds for relief are governed by the one-year statute of limitations set forth in 28 U.S.C. §

2244(d)(1)(A), which began to run when petitioner's conviction became final "by the conclusion

of direct review or the expiration for the time for seeking such review."[4]

---

[4]  In Grounds Fourteen and Fifteen, petitioner alleges that the trial court abused its discretion in denying his motion for leave to file a motion for new trial.  These grounds for relief are not cognizable in federal habeas corpus to the extent that petitioner alleges error in his post-conviction proceedings. *See Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001) (citing *Kirby v. Dutton,* 794 F.2d 245, 246 (6th Cir. 1986) ("habeas corpus is not the proper means by which prisoners should challenge errors or deficiencies in state postconviction proceedings")); *Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007) ("the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review."); *Alley v. Bell,* 307 F.3d 380, 386–87 (6th Cir. 2002) ("error committed during state post-conviction proceedings can not provide a basis for federal habeas relief").  Petitioner has not argued, much less demonstrated, that the factual predicates of the claims underlying his post-conviction motions were not discoverable prior to the close of direct review through the exercise of due diligence.  As noted above, petitioner's conviction and sentence became final on July 26, 2021.  Petitioner indicates that he discovered the alleged "new" evidence underlying his motion for leave to file a motion for a new trial and Grounds Fourteen and Fifteen in March and April of 2021.  (*See* Doc. 8, Ex. 63 at PageID 966, Ex. 67 at

Under § 2244(d)(1)(A), petitioner's conviction became final on July 26, 2021, when the ninety-day period expired for filing a petition for a writ of certiorari to the United States Supreme Court from the Ohio Supreme Court's April 27, 2021 entry declining jurisdiction to hear petitioner's appeal. *See Lawrence v. Florida*, 549 U.S. 327, 333-34 (2007) (citing *Clay v. United States,* 537 U.S. 522, 527-28 (2003), as support for the conclusion that in contrast to the tolling provision set forth in 28 U.S.C. § 2244(d)(2), "direct review" for purposes of determining finality under § 2244(d)(1)(A) includes the time for seeking review in the United States Supreme Court). The statute commenced running on July 27, 2021, the next day after petitioner's conviction became final, *see* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and expired one year later on July 27, 2022, absent the application of statutory or equitable tolling principles.

During the one-year limitations period, petitioner was entitled to tolling of the statute under 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *see also Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). "The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman,* 346 F.3d at 602 (quoting *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998)). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute-of-limitations bar. *Id.*

---

PageID 1061).

It is well-settled that a state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as those prescribing the time limits for filing. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  State post-conviction or collateral review applications rejected by the state courts on timeliness grounds are not "properly filed" and, therefore, are not subject to statutory tolling under § 2244(d)(2).  *See Allen,* 552 U.S. at 5-6; *see also Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Vroman,* 346 F.3d at 603.

In this case, the limitations period was tolled during the pendency of petitioner's pro se post-conviction petition to vacate or set aside his judgment of conviction.  (Doc. 8, Ex. 17).  Petitioner filed the motion on May 19, 2020, while his direct appeal remained pending.  The limitations period remained tolled until February 15, 2022, when the Ohio Supreme Court denied jurisdiction over petitioner's appeal from the denial of the petition.  (*See* Doc. 8, Ex. 31).  As argued by respondent and conceded by petitioner (*see* Doc. 14 at PageID 1184), the limitations period was not tolled during petitioner's subsequent petition for a writ of certiorari to the United States Supreme Court.  *See Lawrence v. Florida*, 549 U.S. 327, 331-36 (2007) (holding that the statute of limitations is not tolled during the pendency of a petition for certiorari from a judgment denying state post-conviction review).[5]  Accordingly, the limitations period remained tolled until February 15, 2022, began to run on February 16, 2022, and expired on February 16, 2023.

---

[5]  Petitioner is similarly not entitled to statutory tolling during his petition for a writ of certiorari filed in connection with his application to reopen his appeal pursuant to Ohio App. R. 26(B). (*See* Doc. 8, Ex. 72).  Because the adjudication of his 26(B) application concluded on December 14, 2021 (*see* Doc. 8, Ex. 50), while petitioner's post-conviction petition remained pending statutory tolling related to the 26(B) petition does not impact the timeliness of the petition in this case.

Petitioner is not entitled to statutory tolling based on his March 11, 2022 motions for leave to file a motion for a new trial pursuant to Ohio Crim. R. 33(B).  (Doc. 8, Ex. 57, 58). Although petitioner contends that his motions were part of the direct review process and not subject to the "properly filed" requirement (*see* Doc. 14 at PageID 1185, 1191-92),[6] "[i]t is well settled that delayed motions for new trial filed after the conclusion of direct review are state collateral review applications, which will not serve to toll the limitations period if they were denied by the state courts as untimely."  *Chamblin v. Warden*, Case No. 1:15-cv-545, 2016 WL 8679076, at *8 (S.D. Ohio June 24, 2016) (Report & Recommendation) (collecting cases), *adopted*, 2016 WL 4472770 (S.D. Ohio Aug. 25, 2016).  *See also Mock,* 2024 WL 2347279 at

---

[6] Petitioner relies on *State v. Bethel*, 192 N.E.3d 470 (Ohio 2022) for the proposition that a motion for a new trial under Rule 33(B) is part of direct review and not subject to the "properly filed" requirement.  (Doc. 14 at PageID 1187-88).  The undersigned is not persuaded by petitioner's argument.  In that case, the Ohio Supreme Court rejected the State's assertion that Bethel's motion for leave to file a motion for a new trial under Rule 33(B) was a successive postconviction petition pursuant to Ohio Rev. Code § 2953.21(K), "which provides that "the remedy set forth in [R.C. 2953.21] is the exclusive remedy by which a person may bring a *collateral challenge* to the validity of a conviction or sentence." *Bethel* at 480 (emphasis added).  Although the Ohio Supreme Court determined that "a motion for leave to file a motion for a new trial is not a collateral challenge under R.C. § 2953.21(K)," nothing in the decision suggests that petitioner's motion for a new trial, filed after the close of direct review, is part of the direct review process or otherwise not an "application for State post-conviction relief or other collateral review" for federal habeas corpus proceedings, which must be "properly filed" to statutorily toll the limitations period.  28 U.S.C. § 2244(d)(2).  *See also Wall v. Kholi*, 562 U.S. 545, 551 (2011) (holding that the phrase "collateral review" with respect to the federal habeas corpus statute of limitations refers to a "review other than review of a judgment in the direct appeal process"); *Mock v. Bracy*, Case No. 4:22-cv-937, 2024 WL 2347279, at *9-10 (N.D. Ohio May 22, 2024) (finding the petitioner's "motion for leave [to file a motion for a new trial] was not part of direct review, but rather a request for a collateral review.").  *Contrast Pudelski v. Wilson*, 576 F.3d 595, 610 (6th Cir. 2009) ("when a state defendant files a motion for new trial before filing a direct appeal, and when the denial of that motion is then consolidated with and reviewed during the direct appeal, the motion for new trial is part of the original criminal proceedings and is not a collateral proceeding.").

*9-10 (N.D. Ohio May 22, 2024) (overruling the petitioner's objection that a motion for a new

trial under Rule 33(B) filed after conclusion of direct review was not a collateral proceeding but

part of direct review);  *Neal v. Wainwright*, Case No. 1:21-cv-976, 2024 WL 1181473, at *10

(N.D. Ohio Feb. 5, 2024) (same) (Report and Recommendation), *adopted*, 2024 WL 1175784

(N.D. Ohio Mar. 19, 2024).  As observed by the Ohio Court of Appeals in affirming the denial of

petitioner's motions, a motion for a new trial under Ohio R. Crim. P. 33(B) must be filed within

fourteen days of the verdict or, if based on newly discovered evidence, within 120 days of the

verdict.  (Doc. 8, Ex. 67 at PageID 1059).  The Rule "excuses a defendant's failure to move for a

new trial within the . . .[applicable deadline] . . . if the defendant proves by clear and convincing

evidence that he or she was unavoidably prevented from discovering the evidence on which the

motion would be based within that time."  (*Id.* (quoting *State v. McNeal*, 201 N.E.3d 861, ¶ 16

(Ohio 2022)).  *See also Bethel*, 192 N.E.3d at 480 ("until a trial court grants leave to file a

motion for a new trial, the motion for a new trial is not properly before the court").

In petitioner's case, the Ohio courts determined that petitioner failed to make the required

showing and denied him leave to file a motion for new trial, concluding that petitioner failed to

demonstrate that he was unavoidably prevented from discovering the evidence underlying his

motions or from timely filing a motion for a new trial based on prosecutorial misconduct.  (*Id.* at

PageID 1065.  *See also* Doc. 8 Ex. 63 (denying petitioner leave to "file beyond the time specified

in Crim. R. 33(B))).  Accordingly, because the state courts denied petitioner's motions for leave

to file a motion for a new trial on timeliness grounds, they are not properly filed and do not serve

to toll the limitations period in this case.[7] *See Pace*, 544 U.S. at 413 ("a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exception"); *Davis v. Bradshaw*, 900 F.3d 315, 324 (6th Cir. 2018) (finding that the petitioner did not receive the benefit of statutory tolling where the Ohio courts determined that petitioner failed to make the required showing under Rule 33(B)); *Mock*, 2024 WL 2347279 at \*11 ("Because the state courts denied Mock's motion for leave and declined to allow Mock to file his motion for a new trial on timeliness grounds, his motion for leave was not 'properly filed' within the meaning of Section 2244(d)(2).").[8]

The AEDPA's statute of limitations is subject to equitable tolling, *see Holland*, 130 S.Ct. at 2560, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson*, 624 F.3d at 784). A habeas

---

[7] To the extent that the Ohio courts made alternate findings to support denying petitioner leave to file a motion to dismiss, such as the finding that petitioner failed to set forth a colorable basis for a *Brady* claim (*see* Doc. 8, Ex. 67 at PageID 1063-65), the alternate finding does not make petitioner's motion properly filed. *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010) (finding that the Ohio Court of Appeals' alternate finding that an untimely post-conviction application was meritless "of course does not render it properly filed.").

[8] Petitioner is also not entitled to statutory tolling based on his November 17, 2021 application for reconsideration, which remained pending until February 17, 2022, one day after the limitations period began to run. Because the Ohio Court of Appeals found the application to be untimely (*see* Doc. 8, Ex. 56 at PageID 834, ¶7), the application did not operate to statutorily toll the limitations period. *See Applegarth*, 377 F. App'x at 450 (finding that an untimely application for reconsideration is not properly filed for the purposes of section 2244(d)(2) and did not operate to statutorily toll the limitations period).

petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 130 S.Ct. at 2562 (internal quotations omitted)); *see also Pace,* 544 U.S. at 418.  Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply.  *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir. 2011)).  "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.*; *see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

Petitioner has not demonstrated that he is entitled to equitable tolling in this case.  First, petitioner has not shown that he has been diligent in pursuing his rights.  The Sixth Circuit has indicated that the relevant inquiry in determining whether equitable tolling applies is whether petitioner was diligent in pursuing federal habeas relief.  In this case, petitioner waited 800 days—from July 26, 2021 until October 4, 2023—to file his habeas petition after his conviction and sentence became final.  Although the petition is based, in part, on purported new evidence, petitioner discovered this evidence in March and April of 2021, prior to the close of direct review.  (*See* Doc. 8, Ex. 63 at PageID 966, Ex. 67 at PageID 1061).  Accordingly, petitioner has not demonstrated that he was diligent in pursuing his federal rights.  *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003) (finding that petitioner's decision to proceed solely in state court "rather than filing his federal habeas petition and protecting his federal constitutional rights, demonstrates a lack of diligence").  *See also Davis*, 900 F.3d at 324.  Second, petitioner has not

argued much less demonstrated that he was prevented by some extraordinary circumstance from seeking relief in a timely manner.  Petitioner has therefore failed to demonstrate that he is entitled to equitable tolling and the petition is time-barred.[9]

Finally, petitioner has not demonstrated that the procedural bar to review should be excused based on a colorable showing of actual innocence.  "To invoke the miscarriage of justice exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence.'" *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)).  The actual-innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'"  *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (quoting *Schlup*, 513 U.S. at 321).  No such showing has been made in this case.

Although petitioner does not explicitly argue that the limitations period should be excused based on a showing of actual innocence, petitioner based his Rule 33(B) new trial motion on the allegedly withheld testimony of two neighbors who witnessed the initial disturbance between Jacobs and Brittany, as well as petitioner's arrival at the residence.  (*See*

---

[9] In response to the motion to dismiss, petitioner claims that he had "conduct intensive legal research beyond the plain language of the statute in order to file a § 2254 petition within the statute of limitations."  (Doc. 14 at PageID 1184).  To the extent that petitioner contends he is entitled to equitable tolling based on his pro se status his position is unavailing.  It is well-settled in the Sixth Circuit that petitioner's pro se status, lack of legal knowledge, or lack of access to legal materials are not sufficient to warrant equitable tolling.  *See, e.g., Hall,* 662 F.3d at 750-51 (rejecting the petitioner's argument that he was entitled to equitable tolling because of his lack of access to the trial transcript, as well as his *pro se* status and limited law-library access); *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)) ("this court has repeatedly held that 'ignorance of the law alone is not sufficient to warrant equitable tolling'").

Doc. 8, Ex. 57 at PageID 851, 52; Ex. 67 at PageID 1060-61). According to petitioner, the neighbors' testimony would tend to disprove the elements of felonious assault and impeach the victim's testimony that he did not assault Brittany, that petitioner hit Jacobs with a sledgehammer, the timing of the incident, and the extent of his injuries. (Doc. 1 at PageID 48). Even assuming, without deciding, that the evidence is "new"—the Ohio courts determined that it was not newly discovered within the meaning of Crim. R. 33(A)(6) (*see* Doc. 8, Ex. 67 at PageID 1061)—petitioner has not made a sufficient showing of actual innocence for the Court to consider the untimely petition.

As an initial matter, although petitioner claims the purported testimony would impeach Jacob's trial testimony, "impeachment evidence of the victim's testimony . . is insufficient to establish a gateway claim of actual innocence." *Plaza v. Hudson*, No. 1:07-CV-674, 2008 WL 5273899, at *10 (N.D. Ohio Dec. 17, 2008) (citing *Webb v. Bell,* No. 2:07-CV-12689, 2008 WL 2242616 (E.D. Mich. May 30, 2008) ("Evidence which merely impeaches a witness is insufficient to support a claim of actual innocence.")).

Petitioner otherwise fails to make a sufficient showing that in light of the testimony no reasonable juror would have convicted of him felonious assault under Ohio Rev. Code § 2903.11(A), which required the prosecution to prove that petitioner (1) knowingly caused serious physical harm to another or (2) caused or attempted to cause physical harm to another by means of a deadly weapon. Initially, neither witness observed the incident between petitioner and Jacobs. (Doc. 8, Ex. 67 at PageID 1065). By petitioner's own testimony he struck Jacobs repeatedly in the face and sufficient evidence was offered to establish "serious injury" underlying petitioner's conviction. (*See* Doc. 8, Ex. 12 at PageID 253-54). Petitioner contends

21

that the neighbors did not witness him arrive or depart with a sledgehammer.  (Doc. 8, Ex. 57 at PageID 852; Doc. 1 at PageID 42).  However, the victim testified that petitioner struck him twice with the weapon and, as noted by the Ohio Court of Appeals in finding sufficient evidence to sustain petitioner's conviction, the prosecution provided evidence of "significant trauma and damage to his skull" consistent with his testimony.  (Doc. 8, Ex. 12 at PageID 253-54).  In any event, the use of a deadly weapon was not necessary to establish petitioner's guilt under 2903.11(A)(1).  (*Id.* at PageID 254 (finding sufficient evidence for the jury's verdict under  § 2903.11(A)(1) and/or (2))).  Finally, although petitioner places significance as to whether Jacobs initially propositioned or assaulted Brittany, testimony as to the earlier altercation does not establish petitioner's innocence.  As noted by the Ohio courts, "while [petitioner] may have believed he was 'defending the honor of Brittany, or responding to an earlier assault on her, the jury concluded that neither reason justified him rushing into Jacobs['] bedroom late at night and brutally assaulting Jacobs [as] he was barely awake."  (Doc. 8, Ex. 67 at PageID 1063). Petitioner has failed to make a showing of actual innocence that would allow the Court to consider his time-barred claims.

Accordingly, in sum, the undersigned concludes that the instant federal habeas corpus petition is barred from review by the one-year statute of limitations governing habeas corpus actions brought pursuant to 28 U.S.C. § 2254.  Under the applicable provision set forth in 28 U.S.C. § 2244(d)(1)(A), petitioner's conviction and sentence became final on July 26, 2021.  The limitations period was statutorily tolled during the pendency of petitioner's post-conviction petition until February 15, 2022, began to run on February 16, 2022 and expired one year later on February 16, 2023.  Because petitioner has not demonstrated that he is entitled to equitable

tolling or made a showing of actual innocence the petition, filed on October 4, 2023, is time-barred.

## IT IS THEREFORE RECOMMENDED THAT:

1. The motion to dismiss (Doc. 11) be **GRANTED** and the petition be **DISMISSED** with prejudice on the ground that the petition is time-barred under 28 U.S.C. § 2244(d)**.**

2. A certificate of appealability should not issue with respect to any of the claims for relief alleged in the petition, which this Court has concluded are barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.[10]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on

---

[10] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his time-barred grounds for relief.  *See Slack,* 529 U.S. at 484.

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


Date:  <u>August 14, 2024</u>                    <u>*/s/ Elizabeth A. Preston Deavers*</u>
                                        Elizabeth A. Preston Deavers
                                        United States Magistrate Judge